

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR - 6 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| TRUST U/W ALBERT HOFFENBERG FBO RES NON-EXEMPT PART D3, *on behalf of itself and all others similarly situated*,<br><br>        Plaintiff,<br><br>    vs.<br><br>LELDON E. ECHOLS, KERNEY LADAY, JACK E. LITTLE, GERARDO I. LOPEZ, J. E. OESTERREICHER, MICHAEL W. RANGER, LEONARD H. ROBERTS, GLENN F. TILTON, C. JOHN WILDER, KOHLBERG KRAVIS ROBERTS & CO., and TEXAS PACIFIC GROUP,<br><br>        Defendants,<br><br>   - and -<br><br>TXU CORP., a Texas corporation,<br><br>       Nominal Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § |

Civil Action No.

**307 CV 0422 - B**

## PLAINTIFF'S CLASS AND DERIVATIVE COMPLAINT

## INTRODUCTION

1.      This is a shareholder class and derivative action ("Action") on behalf of TXU Corp. ("TXU" or the "Company") and its public shareholders against TXU's Board of Directors ("Board") and Kohlberg Kravis Roberts & Co. ("KKR") and Texas Pacific Group ("TPG"), the latter of which are two of the country's lead private equity firms ("Board," "KKR" and "TPG" collectively referred to hereinafter as "Defendants"), in connection with Defendants' agreement to sell the Company to KKR and TPG (the "Proposed Acquisition") in violation of their fiduciary obligations.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2).   Diversity exists between plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This Action is not collusive designed to confer jurisdiction on a court of the United States it would otherwise not have.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) insofar as many of the acts and practices complained of herein occurred in this District.  The nominal defendant TXU is headquartered in this District, and one or more Defendants either reside in or maintain executive offices in this District.

## PARTIES

4.      Plaintiff Trust U/W Albert Hoffenberg FBO Res Non-Exempt Part D3 ("Plaintiff"), a citizen of Maryland, has been the owner of shares of the Company since prior to the transaction herein complained of and continuously through the present Action.

5.      Nominal defendant TXU is a corporation duly organized and existing under the laws of the State of Texas with its principal offices located at 1601 Bryan Street, Dallas, TX

24786



75201-3411. TXU operates as a holding company managing a portfolio of competitive and regulated energy businesses in Texas. As of November 6, 2006, the Company had over 459,240,549 shares of common stock outstanding.

6. Defendant C. John Wilder ("Wilder"), a citizen of Texas, is and, at all times relevant to the Action, has been the Chairman, President and Chief Executive Officer of the Company. Defendant Wilder, who has expressed a desire to stay with the Company following the close of the merger, stands to reap a rich payday. He negotiated a lucrative compensation package three years ago. By some estimates, he may now be eligible for well over $100 million in payments, reflecting the full vesting of several large stock allotments called for under his complex five-year employment contract. In addition, Defendant Wilder has longstanding ties with KKR.

7. Defendant Leldon E. Echols ("Echols"), a citizen of Texas, is and, at all times relevant to the Action, has been a director of the Company.

8. Defendant Kerney Laday ("Laday"), a citizen of Texas, is and, at all times relevant to the Action, has been a director of the Company.

9. Defendant Jack E. Little ("Little"), a citizen of Texas, is and, at all times relevant to the Action, has been a director of the Company.

10. Defendant Gerardo I. Lopez ("Lopez"), a citizen of Washington, is and, at all times relevant to the Action, has been a director of the Company.

11. Defendant J. E. Oesterreicher ("Oesterreicher"), a citizen of Texas, is and, at all times relevant to the Action, has been a director of the Company.

12. Defendant Michael W. Ranger ("Ranger"), a citizen of New York, is and, at all times relevant to the Action, has been a director of the Company.

24786

3

13.     Defendant Leonard H. Roberts ("Roberts"), a citizen of Texas, is and, at all times relevant to the Action, has been a director of the Company.

14.     Defendant Glenn F. Tilton ("Tilton"), a citizen of Illinois, is and, at all times relevant to the Action, has been a director of the Company.

15.     Defendants Wilder, Echols, Laday, Little, Lopez, Oesterreicher, Ranger, Roberts and Tilton are, at times, collectively referred to herein as the "Individual Defendants." The Individual Defendants constitute the Board of Directors of TXU and, by reason of their corporate directorships and/or senior executive positions at the Company, owe fiduciary duties of good faith, due care and loyalty to TXU's public shareholders. At all times relevant herein, the Individual Defendants were obligated to use their best judgment in a prudent manner and in the best interest of the Company's public shareholders. The Individual Defendants were also required to conduct themselves with the highest duties of fair dealing and adequate, full, complete and candid disclosure.

16.     Defendant KKR, a citizen of New York, is a private equity firm specializing in management buyouts, and operates out of New York, Menlo Park, California; London; Paris; Hong Kong and Tokyo.

17.     Defendant TPG, a citizen of Texas, is a private investment firm, is headquartered in Fort Worth, Texas and also operates out of San Francisco; London; Hong Kong: New York; Minneapolis; Melbourne; Menlo Park, California; Mumbai; Shanghai; Singapore and Tokyo.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings Counts IV and V pursuant to Rule 23 of the Federal Rules of Civil Procedure, on his own behalf and as a class action on behalf of all TXU common shareholders (except the Defendants herein and any person, firm, trust, corporation, or other entity related to

24786

or affiliated with any of the Defendants) or their successors in interest, who are or will be threatened with injury arising from Defendants' actions as more fully described herein (the "Class").

19.    Counts IV and V are properly maintainable as a class claims for the following reasons:

a)    The Class is so numerous that joinder of all members is impracticable. As of November 6, 2006, the Company had outstanding over 459,240,549 shares of its common stock;

b)    There are questions of law and fact which are common to the Class including, inter alia, the following: (i) whether Defendants have breached their fiduciary and other common law duties owed to Plaintiff and the members of the Class; (ii) whether Defendants are pursuing a scheme and course of business designed to eliminate the public shareholders of TXU in violation of the laws of the State of Texas in order to enrich the buyout group at the expense and to the detriment of the Plaintiff and the other public stockholders who are members of the Class; (iii) whether the proposed acquisition, hereinafter described, constitutes a breach of the duty of fair dealing with respect to the Plaintiff and the other members of the Class; and (iv) whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

c)    Plaintiff is committed to the prosecution of this Action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff has the same

24786

interests as the other members of the Class. Plaintiff is and shall be a fair and adequate representative for the Class.

d)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

e)      Defendants have acted in a manner that affects Plaintiff and all members of the Class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

## DERIVATIVE ALLEGATIONS

20.     Plaintiff brings this Action, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, derivatively in the right and for the benefit of TXU to redress injuries that it has been suffered and continues to suffer as a direct result of Defendants' violations of law. TXU is named as a nominal party in this litigation solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that otherwise it would not have.

21.     Plaintiff will adequately and fairly represent the interests of TXU in enforcing and prosecuting its rights and has retained counsel experienced and competent in litigating complex class and shareholder derivative actions.

22.     Plaintiff is an owner of TXU stock and has been an owner of TXU stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

24786

23.     Any demand by Plaintiff to the Board to institute the Action is excused as futile, based on the allegations in the Action including, *inter alia*, Individual Defendants': (i) Defendants' failure to protect the interests of TXU and its shareholders by refusing to pursue value-maximizing alternatives; (ii) agreement to the unlawful provisions contained in the Merger Agreement, (iii) use of the sales process to negotiate personal benefits for themselves; and (iv) agreement to cause the Company to incur approximately $24 billion in debt in connection with the Proposed Acquisition. The Board consists of nine directors, all of whom constitute the Individual Defendants in the Action. The Individual Defendants maintain complete voting control over any decisions required to be made by the Board, including any action to be taken in response to a demand made by shareholders. Each of the Individual Defendants directly participated in the wrongs complained of herein, thereby disabling them from acting independently, objectively or in good faith in response to a demand. The Individual Defendants are not disinterested nor independent as detailed herein and set forth more fully below:

a)      Each of the Individual Defendants serves on the TXU Board and is charged with oversight and operation of the Company and the conduct of its business affairs. Each of the Individual Defendants has breached fiduciary duties owed to TXU and its shareholders by, *inter alia*, approving the Proposed Acquisition and failing to take reasonable steps to protect and advance the interests of TXU and its shareholders;

b)      In their capacity as members of the Board, each of the Individual Defendants has taken steps to cause the Company to assume approximately $24 billion in debt in connection with the Proposed Acquisition;

24786

c)      Certain of the Individual Defendants and senior management, including Defendant Wilder, will reap tens, if not hundreds of millions of dollars in special benefits from the consummation of the Proposed Acquisition, including the ability to roll over their respective equity stakes into the surviving company and/or receiving change-of-control benefits such as the acceleration of stock options and restricted stock;

d)      Even though certain of the Individual Defendants claim to be independent directors because they are not directly employed by the Company, none of these Defendants are truly independent and have demonstrated their alignment with Company management by supporting each and every course of action favored by Company management, including voting in favor of the Proposed Transaction; and

e)      The Individual Defendants participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from TXU's shareholders or recklessly and/or negligently disregarded the wrongs complained of herein.

24.      The Individual Defendants named herein have not exercised and cannot exercise independent or objective judgment in deciding whether to bring the Action or whether to vigorously prosecute the Action because each of them, in their capacity as Board members, at the very least, has participated in and/or acquiesced in the misconduct alleged herein.

25.      The Individual Defendants have demonstrated their unwillingness to act in compliance with federal or state law or sue themselves and/or their fellow directors and allies for failure to do so.  These Board members and their allies, among others, constitute the top ranks of

24786



the corporation.  They are friends and/or have developed professional relationships with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

26.     In the Action, TXU's senior insiders and directors herein have demonstrated that their interests are antagonistic to TXU, as they have used the sales process to obtain specific benefits for themselves, refused to maximize shareholder value for TXU and its shareholders, and have voted to cause to the Company to assume $24 billion in additional debt in connection with the Proposed Acquisition.  The Individual Defendants have not and will not authorize suit against themselves, as such a suit would subject them to huge personal liabilities because the particular language currently-utilized in directors' and officers' liability insurance policies (*i.e.*, the insured vs. insured exclusion) would not immunize them against such claims.

### SUBSTANTIVE ALLEGATIONS

27.     On February 26, 2007, TXU issued a press release announcing that it had executed a definitive merger agreement under which an investor group led by KKR and TPG will acquire TXU in a transaction valued at $45 billion (the "Merger Agreement").  Goldman Sachs Corp., Lehman Brothers, Citigroup and Morgan Stanley will join KKR and TPG as equity investors at the closing (the "Investor Group") of the merger.  Under the terms of the Merger Agreement, the Investor Group will offer the public shareholders of the Company $69.25 per each share owned (the "Transaction").

28.     The Transaction requires $8 billion of cash upfront, approximately $24 billion of new debt and the assumption of approximately $13 billion in debt.

24786

29.     A TXU subsidiary, TXU Energy Co., is issuing new debt secured by the entirety of that subsidiary's assets. The Company plans to issue debt in the form of unsecured notes. TXU also has commitments of $24.6 billion of additional debt financing for the Transaction.

30.     KKR and TPG are each putting up about $2 billion in cash. The investment banks Goldman Sachs, Lehman Brothers, Morgan Stanley and Citigroup collectively plan to invest $3 billion from their respective private equity divisions, bringing the cash total to only $7 billion, $1 billion short of the $8 billion required.

31.     JPMorgan Chase, Morgan Stanley and Citigroup are each lending $1 billion to the Investor Group not as secured debt but in the form of equity using the banks' own cash, known as an "equity bridge." This arrangement allows the Investor Group to buy the Company with even less cash upfront. The Investor Group contemplates finding other investors to ante up the cash-portion of Transaction.

32.     The press release further stated that based upon the unanimous recommendation of the Strategic Transactions Committee comprised of purportedly independent TXU directors, the Board approved the Merger Agreement and recommended that TXU's shareholders adopt the agreement.

33.     Under the terms of the agreement, TXU shareholders will be offered $69.25 in cash for each share of TXU common stock held, representing a premium of 15 percent to the closing price of TXU shares on February 22, 2007.

34.     Following the buyout, the Company's current three business divisions are to be reorganized as three separately-operated businesses: (1) generation; (2) transmission and distribution; and (3) retail.

24786

35.     In response to Texas lawmaker's criticism of the Transaction, Texas Energy Future Holdings LP, a holding company formed by KKR and TPG and other investors, pledged that the Investor Group will continue its ownership of the utility for at least five years following the closing and to not load any acquisition-related debt onto the utility if its $32 billion-buyout bid should be successful.

36.     Under the terms of the Proposed Acquisition, the surviving entity could emerge with approximately $33 billion of debt.  This level of debt could ultimately lead to higher costs for consumers.  Texas lawmakers are concerned that the new owners will burden the state's regulated energy-delivery business (called Oncor) with such enormous debt that it would be forced to demand rate relief at the Texas Public Utility Commission.  Without this relief, the owners of the new entity will have to place the utility under bankruptcy protection, possibly pitting a federal bankruptcy court against state officials.

37.     On March 2, 2007, TXU disclosed that the Investor Group lined up the $24.6 billion in debt financing to complete the deal.  The total debt for the Transaction thus approaches $37 billion, and the announcement indicated that the Investor Group would ultimately contribute less than $8 billion to the deal.  In its annual financial report filed with the SEC, TXU indicated that a "substantial majority" of the new debt would be added to its retail energy division, and none would be added to the transmission business, the only regulated part of its business.

38.     As a result of this disclosure, Fitch Ratings announced that it expected to downgrade the credit of TXU and its subsidiaries for a second time, from double-B-plus to single-B, further into junk-bond territory.  A debt load of nearly $37 billion would put TXU's debt-to-cash flow ratings higher than Dynegy Corp. and much higher than other rivals such as Mirant Corp. and NRG Energy Inc.

24786

11

39. One analyst has noted that TXU can handle the debt load as long as its power-generation business keeps producing strong earnings. TXU benefits from high electricity rates in Texas and the lack of new power plants being built. However, an economic downturn or the falling in the price of natural gas could cause rates to fall further.

40. The level of debt in the Transaction, combined with TXU's junk-bond status, could mean higher borrowing costs and ultimately higher rates to consumers.

41. The Transaction is expected to close in the second half of 2007, subject to shareholder approval and required federal regulatory approvals, as well as satisfaction of other customary closing conditions.

42. Credit Suisse Securities and Lazard Freres acted as financial advisors to TXU in connection with the Transaction. Sullivan & Cromwell LLP and Cravath, Swaine and Moore LLP served as outside legal advisors to TXU and the Strategic Transactions Committee, respectively, in connection with the Transaction.

43. Citigroup, Goldman Sachs, JP Morgan, Lehman Brothers and Morgan Stanley acted as financial advisors to the Investor Group. Simpson Thacher & Bartlett LLP, Vinson & Elkins LLP, Covington & Burling LLP, Hunton & Williams LLP and Stroock & Stroock & Lavan LLP acted as legal advisors to the Investor Group.

44. The Company may terminate the Merger Agreement under certain circumstances, including if the Board determines in good faith that it has received a superior proposal, and otherwise complying with certain terms of the Merger Agreement. However, in connection with such termination, the Company must pay a fee of $1 billion to the Investor Group, unless such termination is in connection with a superior proposal submitted by certain persons who made

24786



such a proposal prior to the end of the go-shop period of April 16, 2007. If a bid is received within this brief window of time, the termination fee will be $375 million.

45.    Although members of management, including Defendant Wilder, purportedly have not committed to stay with the Company should the Transaction go through, *it is anticipated* they will remain with the Company following the Transaction.

46.    Unnamed parties have allegedly earned insider-trading profits from the deal. On March 2, 2007, the United States Securities and Exchange Commission announced an informal inquiry into the matter.

47.    The Transaction serves no legitimate business purpose for TXU public stockholders. The Transaction is *solely* designed to serve the business purposes of the Investor Group without regard to the interests of the public stockholders of TXU.

48.    Furthermore, the public stockholders of TXU are not receiving fair value for their holdings in connection with the Transaction. The proposed plan will, for a grossly inadequate consideration, deny Plaintiff and the other members of the Class their right to share proportionately in the future success of TXU and its valuable assets, while permitting the Investor Group to reap huge benefits from the Transaction.

49.    Moreover, Defendants have failed to take steps necessary to ensure Company shareholders will receive maximum value for their shares of TXU common stock. Defendants have failed to conduct an active auction or to establish an open bidding process in order to maximize shareholder value in selling the Company.

50.    The Investor Group and the Individual Defendants have clear and material conflicts of interest and are acting to better the interests of the Investor Group and themselves at the expense of TXU's public stockholders.

24786

51.     KKR and TPG have aided and abetted breaches of fiduciary duty described herein. Without KKR and TPG, the Transaction could not be effectuated.

52.     As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that the nature and value of their investment in TXU will be compromised for the sole benefit of the Investor Group.  Unless the Court enjoins the Transaction, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

53.     Defendants KKR and TPG have conspired in, and aided and abetted, the breaches of fiduciary duty described herein.  The Company, through its management, has participated in the conduct described herein, and if the Transaction is allowed to proceed, it will result in the public shareholders being forced to cash out their desired investment (and the future benefit they hoped to enjoy therefrom).  Because the Company shall cease to exist as a result of the Transaction, TXU must ensure that its public shareholders enjoy every benefit and obligation owed to it by the Individual Defendants.

### Conflicts of Interests In Buyouts By Private Equity Firms Fail To Result In Highest Price Reasonably Obtainable for Shareholders

54.     According to an article appearing in *The Wall Street Journal* on September 8, 2006, the process through which a Company is sold to private equity buyers is generally skewed in favor of the Company's management.  *The Wall Street Journal* article highlighted this conflict as follows:

> In such cases [where a company is being sold to private equity firms], management, with all its detailed knowledge of the company, goes from being a seller striving for a high price to being a buyer looking for an attractive price.  Usually the sale of a public company involves an auction or a competitive-bidding process. But when management joins the private-equity buyers, there often

24786



isn't such an open procedure, and the process is especially fraught with potential conflicts of interest.

* * *

*There is little that is more important to a private-equity firm than courting the management of a potential target. A critical part of the wooing process is to offer management lavish incentives. Those incentives generally involve as much as a 10% stake in the reorganized company -- far more than managements can usually hope for either as a public company or from a strategic buyer.* If management hits financial and operational targets set by the new owners, the executives generally receive stock and options. If the executives exceed those targets, they get more of both. And when the company is recapitalized or goes public, the executives often get windfalls valued at hundreds of millions of dollars.

* * *

While some boards are diligent in vetting deals, the process sometimes is skewed in favor of a sale. For example, there usually is a period when other bidders can come forth with offers. But if that window is short, the likelihood of a rival bid emerging isn't large, since potential buyers won't have time to perform due diligence. *Special committees charged with weighing deals also can set breakup fees that make rival bidders pay dearly to get rid of the original buyer.* [Emphasis added].

55.     Indeed, the formation of so-called "clubs" (the Investor Group in the present case) to acquire publicly-held corporations has become the subject of a probe by the Department of Justice, which has reportedly begun an inquiry into potentially anticompetitive behavior among leading private-equity firms. According to an October 11, 2006 article in *The New York Times*, this informal investigation "appear(s) to be the beginning of a wide-ranging inquiry into private equity . . . ," because the industry that "has become [] increasingly powerful [] on Wall Street in recent years [and] remains relatively unregulated." According to news reports, among the issues that could come under scrutiny is the private equity firms' practice of joining together on some bids. According to *The New York Times* article, this issue is particularly grave because "[w]hen

24786

firms [] form consortiums, or clubs, as they are known in the industry, to bid on a specific company, that could have the effect of limiting competition and thus artificially depressing the price of takeover bids -- and hurting corporate shareholders in the process."

56.    Defendants KKR and TPG have aided and abetted the breaches of fiduciary duty described herein.

57.    Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### Derivative Claim Against the Individual
### Defendants for Abuse of Control

50.    Plaintiff repeats and re-alleges each allegation set forth above.

51.    The Individual Defendants employed the alleged scheme for the purpose of deriving material personal benefits for themselves as part of the Proposed Acquisition.  As part of this scheme, Defendants have caused the Company to undertake $24 billion in additional debt to facilitate the Proposed Acquisition.

52.    The Individual Defendants' conduct constitutes an abuse of their ability to control and influence TXU.

53.    By reason of the foregoing, TXU has been irreparably harmed.  Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

## COUNT II

### Derivative Claim Against The Individual
### Defendants For Gross Mismanagement

54.    Plaintiff repeats and re-alleges each allegation set forth above.

24786



55. The Individual Defendants had a duty to TXU and its shareholders to prudently supervise, manage and control the operations and business of TXU.

56. The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of TXU in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence and candor in the management and administration of TXU's affairs and in the use and preservation of TXU's assets.

57. During the course of discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct. Nonetheless, the Individual Defendants caused TXU to engage in the scheme complained of herein that caused unreasonable risk of damage to the Company, thus grossly mismanaging TXU and, as a result, breaching the duties owed to it and its public shareholders.

58. By reason of the foregoing, TXU has been irreparably harmed. Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

### COUNT III

**Derivative Claim Against The Individual
Defendants For Corporate Waste**

59. Plaintiff repeats and re-alleges each allegation set forth above.

60. By causing the Company to undertake $24 billion in additional debt in connection with the Proposed Acquisition, and further failing to properly consider the interests of the

24786

Company and its public shareholders, the Individual Defendants have caused TXU to waste valuable corporate assets.

61.     As a result of the Individual Defendants' corporate waste, they are liable to the Company.  Only through the exercise of the Court's equitable powers can the Company be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

## COUNT IV

### Class Claim For Breach of Fiduciary
### Duties Against the Individual Defendants

62.     Plaintiff repeats and re-alleges each allegation set forth above.

63.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to the stockholders of TXU and have placed personal interests ahead of the interests of TXU stockholders, causing damages for which Plaintiff seeks compensation.

64.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class the true value of their TXU investment.

65.     Defendants have failed to take steps to maximize the value of TXU to benefit the public stockholders and have embarked on a process that avoids competitive bidding and provides the Investor Group with an unfair advantage by effectively excluding other potential acquirors or alternative transactions.

66.     The Investor Group dominates and controls the business and corporate affairs of TXU, and possesses proprietary information concerning them.  This results in an imbalance and

24786

disparity of knowledge between the Investor Group and other stockholders that makes the process used herein inherently unfair.

67.     The Individual Defendants have violated their fiduciary duties by engaging and endeavoring to enter into the Transaction without regard to the fairness of the Transaction to TXU stockholders and the fiduciary duties owed to Plaintiff and the other public stockholders of TXU. The Individual Defendants have also breached their duties of loyalty and due care by not taking adequate measures to ensure that the interests of TXU's public stockholders are properly protected from overreaching by the Investor Group.

68.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

69.     As a result of the actions of Defendants, Plaintiff and the Class have been and will be irreparably harmed in that they have not and will not receive their fair portion of the value of TXU's stock and businesses and will be prevented from obtaining a fair price for their stock.

70.     Unless enjoined by this Court, Defendants will continue to breach the fiduciary duties owed Plaintiff and the Class, and may consummate the proposed transaction to the disadvantage of the public stockholders.

71.     The Individual Defendants have engaged in self-dealing, have not acted in good faith to Plaintiff and the other members of the Class, and have breached and are breaching fiduciary requirements to the members of the Class.

72.     As a result of the Defendants' activities, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive a fair portion of the true value of TXU's assets and will be prevented from obtaining the real value of their ownership interest in

24786

19

the Company.  Unless the Offer is enjoined by the Court, and a fair process substituted, Defendants will continue to breach their fiduciary duties to Plaintiff and the members of the Class, will not engage in arm's length negotiations on the Offer terms with the buyout group, and will not supply to TXU's stockholders sufficient information to enable them to cast informed decisions on the Offer.

73.     Plaintiff and members of the Class have no adequate remedy at law.

## COUNT V

### Aiding and Abetting Breaches of
### Fiduciary Duty Against KKR and TPG

74.     Plaintiff repeats and realleges each allegation set forth above.

75.     KKR and TPG aided and abetted the Individual Defendants in breaching their fiduciary duties owed the public shareholders of TXU, including Plaintiff and the members of the Class.

76.     The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

77.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

78.     KKR and TPG colluded or aided and abetted the Individual Defendants' breaches of fiduciary duties, and are active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the members of the Class.

79.     KKR and TPG agreed to participate in the breach of the fiduciary duties by the Individual Defendants to the purpose of advancing their own interests.  KKR and TPG will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual

24786

20

Defendants' breaches. KKR and TPG will benefit, *inter alia*, from the acquisition of the Company pursuant to a defective sales process at a grossly inadequate and unfair price if thee Proposed Acquisition is consummated.

80.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly and severally, as follows:

A.     Declaring and decreeing this Action to be a class action and certifying Plaintiff as class representative;

B.     Declaring and decreeing the Proposed Acquisition agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

C.     Enjoining, preliminarily and permanently, the consummation of the Proposed Acquisition, unless and until the Company adopts and implements procedures or process to comply with applicable law;

D.     Directing Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of TXU and its public shareholders;

E.     To the extent, if any, that the transaction or transactions complained of are consummated prior to the entry of this Court's final judgment, rescinding such transaction or transactions, and granting, inter alia, rescissory damages;

F.     Imposition of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

24786

G.      Awarding Plaintiff the costs and disbursements of this Action, including a reasonable allowance for the attorneys and experts' fees and expenses; and

H.      Granting Plaintiff and the other members of the Class such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff and the Class demand a trial by jury on all issues so triable.

Dated: March 6, 2007

Respectfully submitted,

STEPHEN L. HUBBARD
State Bar No. 10140500
ROBERT W. BIEDERMAN
State Bar No. 02301050
DAVID M. GROSSMAN
State Bar No. 00787598
HUBBARD & BIEDERMAN, L.L.P.
1717 Main Street, Suite 4700
Dallas, Texas 75201
Telephone: (214) 857-6000
Fax: (214) 857-6001
E-mail: slhubbard@hblawfirm.com
E-mail: rwbiederman@hblawfirm.com
E-mail: dmgrossman@hblawfirm.com

*Counsel for Plaintiff*

*Of Counsel:*

HARWOOD FEFFER LLP
Robert I. Harwood, Esq.
Jennifer K. Hirsh, Esq.
488 Madison Avenue
New York, New York 10022
Tel: 212-935-7400

24786

JS 44 (Rev. 10/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Trust U/W Albert Hoffenberg FBO Res Non-Exempt Part D3, on behalf of itself and all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff   Baltimore
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

STEPHEN L. HUBBARD, ESQ.
HUBBARD & BIEDERMAN, LLP  (SEE ATTACHMENT)

## DEFENDANTS

Leldon E. Echols, Kerney LaDay, Jack E. Little, Gerardo I. Lopez, J. E. Oestereicher, Michael W. Ranger, (SEE ATTACHMENT)

County of Residence of First Listed Defendant   Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
           LAND INVOLVED.

Attorneys (If Known)

3 07 CV 0422 - B

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☒ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sec. 1332
Brief description of cause:  Shareholder Derivative Action

## VII. REQUESTED IN
## COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $ injunction, other

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
## PENDING OR CLOSED:

(See instructions):  JUDGE   BARBARA M. G. LYNN   DOCKET NUMBER   3-07-CV-0406-M

DATE
03-06-07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

**ADDITIONAL INFORMATION PAGE**
**(FOR CIVIL COVER SHEET)**

DEFENDANTS INFORMATION (CONTINUED)

Leonard H. Roberts, Glenn F. Tilton, C. John Wilder, Kohlberg Kravis Roberts & Co., and Texas
Pacific Group - and - TXU CORP., a Texas corporation, Nominal Defendant


(c)     Stephen L. Hubbard, Esq.
        Hubbard & Biederman, LLP
        1717 Main Street, Suite 4700
        Dallas, Texas 75201
        (214) 857-6000

        Jennifer K. Hirsh, Esq.
        Harwood Feffer LLP
        488 Madison Avenue
        New York, NY 10022
        (212) 935-7400